UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| -v.- | 18 Cr. 236 (KPF) |
| ARMANDO BENIQUEZ, | **ORDER** |
| Defendant. | |

KATHERINE POLK FAILLA, District Judge:

This Order resolves the second motion for compassionate release

pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) brought by Defendant Armando

Beniquez.  (Dkt. #96, 98).  Similar to his prior motion, Mr. Beniquez claims

extraordinary and compelling reasons in the confluence of the ongoing COVID-

19 pandemic, the surge in cases at the Federal Correctional Institution at Fort

Dix, New Jersey ("FCI Fort Dix"), where he is housed, and his pre-existing

medical condition of severe asthma.  In resolving the prior motion, the Court

recommended that the Bureau of Prisons (the "BOP") consider Mr. Beniquez for

a furlough, as permitted by 18 U.S.C. § 3622; as was its right, the BOP denied

Mr. Beniquez's furlough application.  Since then, however, the conditions at

FCI Fort Dix have worsened and Mr. Beniquez's projected date of release has

drawn closer.  For the reasons set forth in the remainder of this Order, the

Court now grants the motion, resentences Mr. Beniquez to time served, and

orders his release from custody within 72 hours of the date of this Order,

pursuant to the conditions outlined herein.

## BACKGROUND

On August 23, 2018, Mr. Beniquez was charged in Superseding Indictment S1 18 Cr. 236 (KPF) (the "S1 Indictment") with five counts of conspiracy, theft, and fraud offenses relating to his participation in a scheme to steal mail from U.S. Postal Collection Boxes in Manhattan with a mail key provided by Mr. Beniquez.  (Dkt. #70 (Revised Final Presentence Report ("PSR")) ¶¶ 1-7, 12-23).  The value of items stolen from the mailboxes exceeded $500,000.  (*Id.* at ¶¶ 17, 20).  On July 8, 2019, Mr. Beniquez pleaded guilty to Count Five of the S1 Indictment, which charged him with aggravated identity theft in violation of 18 U.S.C. § 1028A, and which specified a mandatory term of twenty-four months' imprisonment.  (*Id.* at ¶¶ 8-9).  The Court sentenced Mr. Beniquez principally to that term at his sentencing on December 10, 2019. (Dkt. #67 (judgment), 73 (transcript)).

On April 2, 2020, citing 18 U.S.C. § 3582(c)(1)(A)(i), Mr. Beniquez filed a counseled motion for temporary release to home incarceration until the COVID-19 pandemic had ended or until he had been designated to a BOP facility other than the Metropolitan Correctional Center (the "MCC") to which he had self-surrendered.  (Dkt. #76).  The request was prompted in large measure by Mr. Beniquez's severe asthma; Mr. Beniquez had been prescribed an albuterol inhaler, and yet still had at least five emergency room visits for asthma attacks while on pretrial release.  (Dkt. #86 at 19 (transcript)).  The Government opposed the application (Dkt. #79), and the Court sought additional briefing from the parties concerning its authority under § 3582(c)(1)(A)(i) (Dkt. #80-82).

At a hearing on April 16, 2020, the Court denied Mr. Beniquez's application, while asking that the BOP "give Defendant's furlough application serious consideration as soon as is practicable." (Dkt. #83 at 2; *see also* Dkt. #86 (transcript)).  Thereafter, on account of delays in resolving Mr. Beniquez's furlough application, the Court ordered the BOP to decide the application on or before June 23, 2020.  (Dkt. #89).  The Court understands that the application was denied.  (Dkt. #96 at 2).

On December 23, 2020, Mr. Beniquez renewed his request for compassionate release in a second counseled motion, citing the conditions of his confinement at FCI Fort Dix.  (Dkt. #96).  Mr. Beniquez opined that he may have contracted the COVID-19 virus in April or May while housed at the MCC, but did not know because no antibody tests had been performed; he nonetheless expressed concern about becoming infected or reinfected with the virus.  (*Id.* at 2).  Mr. Beniquez also related continued issues with his asthma, as well as an incident in which he had been injured when a brick fell on his head, neck, shoulder, and leg while he was taking a shower.  (*Id.*).  Separately, Mr. Beniquez described the near-constant lockdown conditions in which he has been held, and argued that his period of incarceration served to date was "at a significantly harsher level than was envisioned when this Court sentenced him in 2019." (*Id.* at 3-4).  The Government opposed Mr. Beniquez's request, arguing, among other things, that (i) his age and medical conditions did not suffice to constitute "extraordinary and compelling reasons" for compassionate release, especially when considered in conjunction with the COVID-19

protocols implemented by the BOP; and (ii) a reduction in sentence would undermine the sentencing factors set forth in 18 U.S.C. § 3553(a).  (Dkt. #97).  Mr. Beniquez filed his counseled reply on January 22, 2021, addressing the Government's arguments and noting a significant spike in COVID-19 cases at FCI Fort Dix.  (Dkt. #98).

In connection with this motion, the Court reached out to the BOP Northeast Regional Counsel, in order to ascertain whether the COVID-19 pandemic had caused the BOP to suspend or forgo consideration of inmates for transition to residential reentry centers ("RRCs") or home confinement, pursuant to 18 U.S.C. § 3624(c).  The Court was advised by Regional Counsel that the BOP continues to evaluate inmates for placement in RRCs or home confinement, and would evaluate Mr. Beniquez for same in due course.  Regional Counsel confirmed, however, that any such a transition would be limited to the "shorter of 10 percent of the term of imprisonment of that prisoner or 6 months," pursuant to 18 U.S.C. § 3624(c)(2), which in this case would be 2.4 months.

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the BOP, or upon motion of the defendant.  A defendant may move under § 3582(c)(1)(A)(i) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse

of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under § 3582(c)(1)(A)(i), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

Congress previously delegated responsibility to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). The Sentencing Commission has determined that a defendant's circumstances meet this standard, *inter alia*, when the defendant is "suffering from a terminal illness" or a "serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other reasons." U.S.S.G. § 1B1.13(1)(A) & Application Note 1(A), (D). In a recent case, however, the Second Circuit held that with respect to a compassionate release motion brought by a defendant (as distinguished from the BOP), the policy statement set forth in U.S.S.G. § 1B1.13 is "not 'applicable,'" and that

neither it nor the BOP's Program Statement constrains a district court's discretion to determine what reasons qualify as "extraordinary and compelling." *United States* v. *Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020);[1] *see also United States* v. *Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court finds that the majority of district courts to consider the question have found that the amendments made to 18 U.S.C. § 3582(c)(1)(A) grant this Court the same discretion as that previously give to the BOP Director, and therefore the Court may independently evaluate whether [a defendant] has raised an extraordinary and compelling reason for compassionate release."); *see generally United States* v. *Roney*, — F. App'x —, No. 20-1834, 2020 WL 6387844 (2d Cir. Nov. 2, 2020).  That said, while the Court does not consider itself bound by U.S.S.G. § 1B1.13, it will look to that provision for guidance.  *See United States* v. *Thrower*, No. 04 Cr. 903 (ARR), 2020 WL 6128950, at *3 (E.D.N.Y. Oct. 19, 2020).

Even if a court determines that "extraordinary and compelling reasons" exist, it must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable.  *See* 18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Harris*, No. 15 Cr. 445 (PAE), 2020 WL 5801051, at *2 (S.D.N.Y. Sept. 29, 2020).  In this regard, the Court again looks to, but does not consider

---

[1]     The Second Circuit remanded the matter to the district court after concluding that the lower court had misapprehended the limits of its own discretion.  In so doing, the Court did not define what qualifies as "extraordinary and compelling" under 18 U.S.C. § 3582(c)(1)(A), other than to recall the directive in 28 U.S.C. § 994(t) that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  *United States* v. *Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020).

itself bound by, the Sentencing Commission's view that a sentence reduction would be consistent with its policy statements if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).[2]

## DISCUSSION

The Court does not understand the Government to argue that Mr. Beniquez has failed to exhaust the applicable administrative requirements (*see generally* Dkt. #97), and so it proceeds to address the merits of Mr. Beniquez's application.  The issue at hand is whether Mr. Beniquez has identified "extraordinary and compelling reasons" warranting his release.  The Court finds, on the unique circumstances of this case, that he has.

It remains the case that severe asthma, of the type experienced by Mr. Beniquez, is a factor the Court must consider.  However, the Centers for Disease Control and Prevention (the "CDC") has revised its analysis of comorbidities, distinguishing conditions that place individuals at higher risk with regard to COVID-19, from conditions that *might* place individuals at higher risk, but for which more study is required.  *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavir

---

[2]     The § 3142(g) factors are largely duplicative of those in § 3553(a), but also include "whether the offense is a crime of violence" and "the weight of the evidence against the [defendant]."  18 U.S.C. § 3142(g)(1)-(4).

us%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html

(accessed January 26, 2021). "Moderate to severe asthma" is now in the latter

category.

The Court also acknowledges that the conditions at FCI Fort Dix have

worsened in recent months, as summarized in Mr. Beniquez's reply

submission:

> When Mr. Beniquez filed his renewed request for compassionate release on December 23, 2020, the BOP was reporting that 526 inmates at Fort Dix had tested positive for COVID-19 and 269 were awaiting test results. As of yesterday, January 21, 2021, 1581 inmates had tested positive; today, January 22, 1592 inmates have tested positive for COVID-19. Fort Dix currently has the 5th highest number of active cases of infection in all BOP facilities. Put simply, Fort Dix is "experiencing a surge in the number of COVID-19 cases among inmates and staff." And the surge is not limited to the low-security facility — there are also an undisclosed number of active infections in the Camp, where Mr. Beniquez is housed. This increase in cases shows no signs of slowing, and the measures taken by Fort Dix are plainly inadequate to prevent the spread of the virus.

(Dkt. #98 at 2 (footnotes omitted)). To be sure, those numbers have since come

down, with FCI Fort Dix now reporting 40 inmates and 32 staff members who

currently test positive for the virus; of note, however, the facility also reports

that 1,409 inmates and 45 staff members have recovered from the virus. *See*

https://www.bop.gov/coronavirus/ (last accessed January 26, 2021).

Courts in this District have split on the issue of whether the conditions

at Fort Dix are sufficiently extraordinary and compelling to warrant

compassionate release.  In a recent decision, Judge Nathan concluded in the affirmative:

> The current situation at FCI Fort Dix is particularly concerning.  Conditions at the facility appear to present serious risks both of spread of the virus and of inadequate medical care for those who have been infected.  The Government does not dispute Mr. Rodriguez's account that inmates have been provided only a single disposable surgical mask since the beginning of the pandemic.  Nor does it dispute his claim that correctional officers often flout masking requirements, or that following his positive test result Mr. Rodriguez was offered no more medical care than Tylenol and bed rest.  Hundreds of inmates at the facility have tested positive within the past two months. The COVID-19 outbreak at FCI Fort Dix has also had serious effects on inmates' wellbeing apart from medical risks.  The facility has prohibited all visitation and greatly restricted inmate movement.  Considering these factors, the Court joins those others that have held that the current COVID-19 situation in FCI Fort Dix may qualify as an extraordinary and compelling circumstance supporting compassionate release, even for an inmate who has already apparently recovered from COVID-19.  *See, e.g.*, *United States* v. *Geraldo Vega*, No. 89 Cr. 229 (JS), 2020 WL 7060153, at *3 (E.D.N.Y. Dec. 2, 2020).

*United States* v. *Rodriguez*, No. 16 Cr. 7 (AJN), 2020 WL 7640539, at *4 (S.D.N.Y. Dec. 23, 2020) (citation omitted); *see also United States* v. *Tazewell*, No. 07 Cr. 1035 (RMB), 2021 WL 21980, at *4-6 (S.D.N.Y. Jan. 3, 2021) (granting compassionate release to Fort Dix inmate with hypertension, high blood pressure, high cholesterol, and sickle cell disease); *United States* v. *Fernandez*, No. 12 Cr. 844-9 (AJN), 2020 WL 7647459, at *3-4 (S.D.N.Y. Oct. 14, 2020) (granting compassionate release to Fort Dix inmate with hypertension and diabetes).  Courts concluding to the contrary include Judge

Richard J. Sullivan, sitting by designation, who recently collected decisions from other courts denying compassionate release motions submitted by comparably situated Fort Dix inmates.  *See United States* v. *Suarez*, No. 16 Cr. 453 (RJS), 2020 WL 7646888, at *3 (S.D.N.Y. Dec. 23, 2020).

While this Court acknowledges that it is a very close call, it concludes that Mr. Beniquez has identified extraordinary and compelling circumstances warranting compassionate release.  Unlike several other movants before the Court, Mr. Beniquez has a documented history of severe asthma, with repeated trips to the emergency room while on pretrial release.  And while the Government is correct that Mr. Beniquez has not tested positive for the COVID-19 virus, he nonetheless sustained injuries recently when a brick fell on his head and body while he was showering, from which injuries he is apparently still suffering.  The Court respects the BOP's decision not to furlough Mr. Beniquez, but it has become concerned about the risks to his health and safety if he were to remain at FCI Fort Dix.  The Court also is persuaded by the comparatively short period of time remaining on Mr. Beniquez's sentence, and the reduced opportunity for placement in an RRC (which itself would have engendered public health and sanitation issues) or home confinement.  Given the information set out in the remainder of this Order, the Court concludes that Mr. Beniquez is sufficiently punished by serving the next six months in home, rather than carceral, confinement.

Nor would granting Mr. Beniquez's motion undermine the sentencing factors set forth in 18 U.S.C. § 3553(a).  Mr. Beniquez's offense was serious,

and deserving of the two-year term of imprisonment he received.  But the policy goals this Court sought to vindicate would also be achieved by releasing Mr. Beniquez now to home incarceration for an amount roughly equivalent to the remainder of his term of imprisonment.

The Court GRANTS Mr. Beniquez's motion for compassionate release and reduces his term of imprisonment to that of time served.  For one year from the date of his release, Mr. Beniquez shall be subject to all the mandatory conditions, standard conditions, and special conditions of supervised release from the original judgment and sentence in this case.  In addition, the Court orders the BOP to release Mr. Beniquez within 72 hours of the date of this Order on the following conditions, which are special conditions of supervised release additional to those previously imposed:

1. Mr. Beniquez shall be subject to home incarceration, to be enforced by location monitoring technology at the discretion of the Probation Department, at the residence at Richman Plaza in the Bronx, New York, at which he resided prior to his arrest (the "Residence"), for the six months following the date of his release. Installation of location monitoring technology will take place after a 14-day quarantine period (described in paragraph 2 below) has been completed.  During the period of home incarceration, Mr. Beniquez must remain at his approved residence except as necessary for medical treatment, which requires prior notice to and approval by the Probation Department unless it involves a true

emergency, and except as necessary to obtain essentials, which requires prior notice to and approval by the Probation Department.

2. In light of the COVID-19 pandemic, Mr. Beniquez upon release must self-quarantine at the Residence for 14 days, except as necessary for medical treatment, which requires prior notice to and approval by the Probation Department unless it involves a true emergency.

3. Mr. Beniquez shall arrange with relatives to provide essentials during this 14-day period; if such an arrangement is impossible, he shall request permission from the Probation Department to obtain essentials on his own, which he shall not do without the Probation Department's approval.

4. Mr. Beniquez is to possess or have access to a phone that will allow video conferencing by the Probation Department. This phone will be monitored by the Probation Department per the special condition previously imposed.

5. During the period of home incarceration, Mr. Beniquez shall commence treatment services as ordered in the December 10, 2019 Judgment.

6. Mr. Beniquez shall contact Supervisory U.S. Probation Officer Kevin Mulcahy (cell phone: (646) 210-4075) upon his release.[3]

---

[3]   The Court is imposing the first condition to impose just punishment, avoid unwarranted disparities, and recognize the seriousness of the offense. The remaining conditions are imposed to allow proper supervision by the Probation Department.

The Government is directed to transmit a copy of this Order to the BOP.

SO ORDERED.

Dated:   January 26, 2021
        New York, New York

_____
      KATHERINE POLK FAILLA
      United States District Judge